JOHN F. MURTHA, ESQ.
**Nevada Bar No. 835**
ELLEN JEAN WINOGRAD, ESQ.
**Nevada Bar No. 815**
DANE W. ANDERSON, ESQ.
**Nevada Bar No. 6883**
WOODBURN AND WEDGE
Sierra Plaza
6100 Neil Road, Ste. 500
P.O. Box 2311
Reno, Nevada  89505
Telephone:  775-688-3000
Fax:   775-688-6088
jmurtha@woodburnandwedge.com
ewinograd@woodburnandwedge.com
danderson@woodburnandwedge.com

Attorneys for Angelique L.M. Clark,
Court-Appointed Receiver for
Alta Gold Mining Co.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

ALTA GOLD MINING CO., by and through its
Court-Appointed Receiver Angelique L.M. Clark,

          Plaintiff

vs.

AERO-NAUTICAL LEASING CORPORATION,
a Delaware corporation; CENTURY CAPITAL
PARTNERS, LLC, a Delaware corporation;
MICHAEL ANTHONY, a Florida resident;
BRADLEY SWAHN, a Florida resident, and
DOES 1-X, inclusive.

          Defendants.
_____/

AERO-NAUTICAL LEASING CORPORATION, a
Delaware corporation on behalf of itself and
derivatively,

          Counter-Plaintiff,

Case No.  3:13-cv-00311-RCJ-VPC

**PLAINTIFF'S FIRST AMENDED
COMPLAINT**

vs.

ALTA GOLD MINING CO., by and through its
Court-Appointed Receiver Angelique L.M. Clark;
and ANGELIQUE L.M. CLARK, an individual,

   Counter-Defendants.

- and –

ALTA GOLD MINING CO., a Nevada corporation,

   Nominal Defendant.

_____/

Plaintiff, Alta Gold Mining Co. ("Alta"), by and through its Court-Appointed

Receiver, Angelique L.M. Clark, and counsel of record, Woodburn and Wedge,

complains and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court does not have jurisdiction over this matter.  This case was

initially commenced in the Second Judicial District Court for the District of Nevada as

Case No. CV13-01034.    Defendant Aero-Nautical Leasing Corporation ("Aero-

Nautical") removed the matter to this Court on the basis of diversity of citizenship (28

USC § 1332).  Defendants Century Capital Partners, LLC ("Century") and Michael

Anthony ("Anthony") filed a consent to the removal, but the consent was untimely.

Alta has filed a motion to strike Century and Anthony's consent and to remand the

case to state court.

2.     If this Court were to have jurisdiction over this matter, venue would be

appropriate pursuant to the provisions of 28 USC 1441.

## THE PARTIES

3.     Alta is a Nevada corporation duly authorized to conduct business in the

State of Nevada.

4.    On May 1, 2011, Angelique L.M. Clark ("Receiver") was appointed by the Second Judicial District Court of the State of Nevada as Receiver for Alta in Case No. CV11-01488 and brings this action in that capacity.

5.    Alta is informed and believes that at all times relevant hereto, Defendant Aero-Nautical was a Delaware corporation transacting business within the State of Nevada.

6.    Alta is informed and believes that at all times relevant hereto, Defendant Century was a Delaware corporation transacting business within the State of Nevada.

7.    Alta is informed and believes that at all times relevant hereto, Defendant Anthony was a Florida resident transacting business within the State of Nevada.

8.    Alta is informed and believes that at all times relevant hereto, Defendant Bradley Swahn ("Swahn") was a Florida resident transacting business within the State of Nevada.

9.    Plaintiff does not know the true names of the individuals, corporations or partnerships sued and identified herein in fictitious names as DOES I-X.  Plaintiff prays leave of this Court that when the true names and capacities of said Defendants are ascertained, it may amend this Complaint to insert the same with appropriate allegations.  Plaintiff is informed and believes, and upon such information and belief alleges, that the Defendants designated herein by such fictitious names are or may be liable to Plaintiff in this action.

///

///

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GENERAL ALLEGATIONS**

10.     This case centers around the issuance of 25,304,492 shares of Alta stock (the "Disputed Stock") originally issued to Century on February 23, 2006.  The Disputed Stock was later transferred by Century to Aero-Nautical on September 10, 2012.

11.     Alta asserts that the original issuance of the Disputed Stock was the result of fraud, breaches of corporate and fiduciary duties and a civil conspiracy to commit fraud by Swahn, Anthony and Century.  As a result, the Disputed Stock is a nullity and, therefore, Aero-Nautical cannot be, and is not, a bona fide stockholder of Alta by reason of its purchase of the Disputed Stock.

12.     In addition to monetary damages Alta may be able to recover, Alta seeks a declaration from this Court that:  (1) the Disputed Stock is null and void; (2) the Disputed Stock has always been a nullity; and (3) Aero-Nautical is not a bona fide stockholder of Alta by reason of its purchase of the Disputed Stock.  Finally, Alta seeks an order from this Court rescinding the issuance of the Disputed Stock in the first instance.

**A.     ALTA'S HISTORY.**

13.     Prior to 1999, Alta owned and operated several mining properties in the State of Nevada.

14.     Alta's most promising mining claims were certain patented and unpatented claims located in the Olinghouse Mining District in Washoe County, Nevada (the "Alta Claims").

15.     On April 14, 1999, Alta filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (Title 11 USC) with the United States

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bankruptcy Court for the District of Nevada as Case No. 99-31080-GWZ (the "Alta Bankruptcy").

16.    Alta was not successful in its Chapter 11 reorganization efforts.  On October 6, 2000, Alta's Bankruptcy counsel sent a letter to the Office of the United States Trustee in which he advised that Alta had ceased all operations, had closed its business offices, and had no employees, officers or directors.  For that reason, Alta's bankruptcy was dismissed on December 18, 2000.

17.    On June 1, 2003, the Nevada Secretary of State revoked Alta's corporate charter.

18.    Alta is informed and believes, and on that basis alleges, that between the time the Alta Bankruptcy was dismissed because it had no officers or directors and November 30, 2005, there were no shareholder or director meetings held at which new/replacement officers or directors were elected or appointed.

19.    On November 30, 2005, Swahn filed a Verified Complaint for Appointment of Custodian with the Eighth Judicial District Court of the State of Nevada as Case No. A-513790 (the "Custodianship Action").  Pursuant to that Complaint and a subsequent motion, Swahn sought to be appointed as Alta's custodian pursuant to NRS § 78.347(1)(a).  On February 6, 2006, Swahn was appointed as Alta's custodian pursuant to, and with the powers enumerated in, NRS § 78.347.

20.    On February 6, 2006, Swahn filed a Notice of Entry of Order relating to the order appointing him as Alta's Custodian.  This was the last document Swahn filed in the Custodianship Action.

21.    Aero-Nautical is a Delaware corporation.  Its sole shareholder is an individual named Lawrence Allen ("Allen").

22.     Allen is the sole officer and shareholder of another Nevada corporation known as Ward Enterprises ("Ward").

23.     Prior to December 2011, Ward was the sole shareholder of another Nevada corporation known as Golden Chain, Inc. ("GCI") and Allen was GCI's sole officer and director.

24.     Prior to May 2011, Allen, Ward and GCI were engaged in litigation pending before the Second Judicial District Court of the State of Nevada in Case No. CV09-01904 (the "Quiet Title Action").  In the Quiet Title Action, GCI alleged it owned the Alta Claims and on that basis it asserted trespass claims against the defendants, Mitchell Fanning, et al. ("Fanning").

25.     Fanning challenged GCI's claim of ownership of the Alta Claims.   In response, GCI threatened to amend it complaint in the Quiet Title Action to allege a claim for quiet title to the Alta Claims knowing full well Alta had no officers, directors or employees to speak for Alta or to defend Alta's title to the Alta Claims.

26.     Fanning, as a shareholder and creditor of Alta, filed another action with the Second Judicial District Court for the State of Nevada seeking to have a receiver appointed for Alta so its ownership of the Alta Claims could be defended.  That case was filed on May 13, 2011, as Case No. CV11-01488 (the "Receivership Action").

27.     On May 18, 2011, Clark was appointed as Alta's Receiver and she has been working tirelessly since then to defend Alta's title to the Alta Claims.

## B.    THE CUSTODIANSHIP ACTION.

28.     As alleged above, on November 30, 2005, Swahn commenced the Custodianship Action in which he sought to be, and was, appointed Custodian for Alta

6

pursuant to NRS § 78.347 on the basis that Alta's charter had been revoked by the Nevada Secretary of State.

29.     Between July 2005 and March 2006, Swahn had filed at least eleven (11) actions with the Eighth Judicial District of the State of Nevada in which he sought to be appointed custodian for a variety of corporate defendants.

30.     In the Alta Custodianship Action, Swahn alleged he was the owner of 500 shares of Alta stock.  However, at the time the Custodianship Action was filed, Swahn was not a shareholder of record.

31.     In his Custodianship Complaint, Swahn alleged he intended to restore Alta's business for the benefit of Alta's shareholders.  There is nothing of record in the Custodianship Action to indicate that Swahn ever did anything to restore Alta's business.

32.     In his Custodianship Complaint, Swahn alleged there were no conflicts of interest preventing him from serving as Alta's Custodian.  Ultimately, however, the result of the Custodianship Action, in fact the only result of the Custodianship Action, was that an entity of which Swahn was a principal obtained the Disputed Stock for little or no consideration.

33.     In his Custodianship Complaint, Swahn alleged he intended to hold a shareholder meeting for Alta before May 20, 2006.  There is nothing of record in the Custodianship Action to indicate that Swahn ever noticed or held a meeting of Alta's shareholders.

34.     Two weeks after Swahn was appointed as Alta's Custodian, he appointed Anthony as Alta's sole officer and director.

35.   There is nothing of record in the Custodianship Action to indicate that Swahn ever advised the Custodianship Court or Alta's shareholders of Anthony's appointment as Alta's sole officer or director.

**C.    THE ISSUANCE OF THE DISPUTED STOCK.**

36.   In the final analysis, Swahn's sole act as Alta's Custodian was to appoint Anthony as Alta's sole officer and director, as it turns out, for the sole purpose of causing the Disputed Stock to be issued to an entity in which Swahn and Anthony were principals.

37.   On the very same day Anthony was appointed as Alta's sole officer and director, he issued the Disputed Stock to Century.

38.   Century is a Florida limited liability company and Swahn and Anthony were principals of Century when the Disputed Stock was issued.

39.   There is nothing of record in the Custodianship Action to indicate that Swahn or Anthony ever advised the Custodianship Court or Alta's shareholders that: (1) Anthony issued the Disputed Stock (constituting approximately 42% of Alta's total authorized stock); or (2) that Anthony and Swahn were principals of the entity that received the stock.

40.   There is nothing in the record of the Custodianship Action to indicate that Century ever paid anything to Alta or performed any services for Alta as consideration for the issuance of the Disputed Stock.

41.   As Alta's Custodian, Swahn owed fiduciary duties to Alta and its shareholders.

42.     As Alta's sole officer and director, Anthony owed fiduciary duties to Alta and its shareholders including the duty of care, the duty of loyalty and the duty to act in good faith and with a view to the best interests of the corporation.

43.     The issuance of the Disputed Stock was invalid under Nevada corporate law for several reasons including, but not limited to, the following:

**A.     Anthony's Financial Interest in Century:**

I.     Pursuant to NRS §78.140, a contract between a corporation and another entity in which a director of the corporation is financially interested may be void or voidable if the financially interested director approved the transaction unless certain conditions are met.

II.     Under the facts presented in this case, the conditions that would cause the contract between Alta and Century to be "not void or voidable" do not exist and, therefore, the contract is void or voidable.

**B.     The Issuance of the Disputed Stock Was Not Authorized by a Properly Constituted Board of Directors:**

I.     NRS § 78.211 provides that the issuance of a corporation's shares must be approved by the corporation's board of directors.

II.     At the time of Swahn's appointment as Alta's custodian, Alta had no directors, much less a board of directors.

III.     Swahn purportedly appointed Anthony as Alta's sole director.

IV.     The statutory provision under which Swahn was appointed Custodian (NRS § 78.347) does not authorize a custodian to appoint a board of directors. Instead, it grants custodians certain powers by incorporating the provisions of NRS §§78.590, 78.635 and 78.650. None of those provisions, however, authorize the appointment of a board of directors by a custodian.

V.     Because Swahn had no authority to appoint Anthony as Alta's sole director, there was no properly constituted board of directors that had authority to approve the issuance of the Disputed Stock and, therefore, Anthony's authorization to issue the Disputed Stock was null and void.

///

9

**C.** **The Disputed Stock Should Have Been Placed in Escrow and not Released to Century Until it Performed its Required Services:**

I.    Alta's Restated By-Laws effective January 20, 1997, provide that stock of the corporation may be issued for such consideration as permitted by NRS 78.211.

II.    NRS § 78.211 provides that a corporation may place shares issued for future services into escrow, but if the future services are not performed, the shares may be cancelled in whole or in part.

III.    Century's purported consideration for the issuance of the Disputed Stock included services to be rendered by Anthony and/or Century.

IV.    Anthony did not provide for the escrow of the Disputed Stock as provided in NRS § 78.211.  Instead, Anthony caused the Disputed Stock to be issued outright to Century without the requirement that he or Century perform their promised future services.

**D.** **Century Did Not Pay an Adequate Consideration for the Disputed Stock:**

I.    NRS §78.211 provides that the judgment of the board of directors as to the consideration received for the shares issued is conclusive in the absence of actual fraud in the transaction.

II.    In this case, Alta claims the Disputed Stock was fraudulently issued, and therefore, the consideration paid by Anthony/Century and the adequacy of the consideration is subject to analysis pursuant to NRS § 78.211.

III.    Alta' Bylaws prohibit the issuance of shares for less than par value, and the par value of Alta's stock was stated to be $.001 per share. Accordingly, Alta must have received at least $25,304.49 in value for the issuance of the Disputed Stock.

IV.    The Board of Directors written consent for the issuance of the Disputed Stock, signed only by Anthony, does not state the consideration paid for the Disputed Shares other than to state that the Disputed Shares were being issued to compensate Anthony and Century.  The written consent makes no distinction between services rendered by Anthony or Century prior to the issuance of the Disputed Stock as compared to services to be rendered by Anthony and Century.  Furthermore, the written consent makes no attempt to value the pre-issuance and post-issuance services performed or to be performed by Anthony or Century.

V.    Considering the fraud perpetrated by Swahn, Anthony and Century in this matter, there can be no presumption the Disputed Stock was issued for adequate consideration.

1

2   Given Swahn and Anthony's clear cavalier attitude toward the duties they owed to Alta

3   and its shareholders and their total disregard of corporate formalities, other deficiencies

4   in relation to the issuance of the Disputed Stock may be revealed during discovery in

5   this case.

6
        44.     There is nothing of record in the Receivership Action to indicate that
7
    Swahn, as Alta's Custodian, or Anthony, as Alta's sole officer and director ever did
8
9   anything to advance Alta's business or that they truly ever intended to do anything to

10  advance Alta's business.

11      45.     The Custodianship Action was nothing more than a sham proceeding

12  pursuant to which the sole and exclusive goal of Swahn and Anthony was to issue a

13
    significant portion of Alta's stock to an entity which they controlled.  Swahn and Anthony
14
    used the Custodianship Action to hi-jack ownership of approximately 42% of Alta's
15
16  stock via a self dealing transaction that was neither fair to Alta nor in its best interests.

17      46.     After Anthony issued the Disputed Stock, Swahn allowed Alta's corporate

18  charter to be revoked, once again, by the Nevada Secretary of State.

19      47.     To recap, prior to the commencement of the Custodianship Action, Alta

20  had no active officers, directors or business and its corporate charter was revoked.

21  After the Custodianship Action, Alta had no active officers, directors or business and its
22
    corporate charter was revoked.  The only difference was that post-custodianship, an
23
    entity controlled by Swahn and Anthony purportedly owned approximately 42% of Alta's
24
25  stock.

26  ///

27  ///

28

1
2

**D.    NO ONE OTHER THAN SWAHN AND ANTHONY KNEW, OR COULD HAVE KNOWN, ABOUT THE ISSUANCE OF THE DISPUTED STOCK.**

3
4

48.    Swahn and Anthony took affirmative steps to conceal the issuance of the Disputed Stock.

5
6
7
8
9

49.    Although Swahn was Alta's Custodian and owed fiduciary duties to Alta's shareholders, there is nothing of record in the Custodianship Action to indicate that he ever notified the Court or Alta's shareholders of the issuance of the Disputed Stock.

10
11
12
13
14
15

50.    In an affidavit filed with the Custodianship Court in support of his motion to be appointed Custodian, Swahn stated that he would "promptly report developments to the Court as the same occur." Swahn never submitted a report of any kind to the Receivership Court, much less a report in which he advised the Court about the issuance of the Disputed Stock.

16
17
18
19
20
21
22

51.    Although Anthony was purportedly appointed as Alta's sole officer and director as part of the Custodianship Action, there is nothing of record in the Custodianship Action to indicate that Anthony ever:  (1) advised the Custodianship Court of the issuance of the Disputed Stock; or (2) advised the Custodianship Court that the Disputed Stock was issued to a company in which he and Swahn were principals.

23
24
25
26

52.    Although Anthony, as Alta's sole officer and director owed duties of care, loyalty and good faith to Alta and its shareholders, there is nothing of record in the Custodianship Action to indicate Anthony ever advised Alta's shareholders of the issuance of the Disputed Stock.

27
28

53.     Between February 2006, when Swahn was appointed as Alta's Custodian and May 2011 when Clark was appointed Receiver, Swahn and Anthony were Alta's "eyes and ears".  No other person or entity was in control of Alta that could have discovered Swahn's and Anthony's misdeeds.  Swahn and Anthony, of course, had no reason or incentive to "blow the whistle" on their own improper conduct as Alta's Custodian, officers and directors.

54.     Although Alta had once been an SEC reporting company and although Swahn represented to the Custodianship Court that he should be appointed Alta's Custodian to permit Alta to "resume its status of good standing, and otherwise restoring the business and prospects of the corporation" Swahn and Anthony, during the pendency of the Custodianship Action, or thereafter, never filed any documents or statements with the SEC and they never disclosed the issuance of the Disputed Stock to the SEC.

E.     **ALTA'S DISCOVERY OF THE ISSUANCE OF THE DISPUTED STOCK.**

55.     The Alta Bankruptcy was dismissed on December 18, 2000, because Alta had no officers, director or employees.

56.     During the Alta Bankruptcy, a fellow by the name of John Bielun ("Bielun") had been appointed as Alta's representative under the provisions of FRBP 9001(5).  Bielun resigned as Alta's 9001(5) representative on August 30, 2000.

57.     Alta is informed and believes and on that basis alleges that between December 2000 and February 2006 (when Swahn was appointed Alta's custodian) there were no shareholders or board meetings at which new/replacement officers and directors could have been elected or appointed for Alta.

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

58.    Swahn was appointed Alta's Custodian in February 2006.  Although it does not appear Swahn took any action as Alta's Custodian after he purportedly appointed Anthony as Alta's sole officer and director, he remained as Alta's Custodian until the Custodianship Action was dismissed in March 2013.

59.    There is nothing of record in the Custodianship Action, or elsewhere, to indicate that Anthony ever resigned his position as Alta's sole officer and director.

60.    Alta is informed and believes, and on that basis alleges, that between February 2006 (when Swahn was appointed Alta's Custodian) and May 2011 (when Clark was appointed as Alta's Receiver), there were no shareholder or board meetings at which officers and directors could have been elected or appointed for Alta.

61.    After the Disputed Stock was issued and until Clark was appointed Receiver, Swahn and Anthony were still in control of Alta.

62.    After the Disputed Stock was issued and until Clark was appointed Receiver, there were no other officers, directors other persons who were in a position to discover and investigate the issuance of the Disputed Stock other than Swahn and Anthony.

63.    While Swahn and Anthony were clearly aware of the issuance of the Disputed Stock, there is no reason to believe they would act adverse to their economic interests in Century and do anything to challenge their own misdeeds in connection with the issuance of the Disputed Stock.

64.    When Clark was appointed Receiver, she engaged legal counsel to represent Alta in the Quiet Title Action.

65.    During discovery in the Quiet Title Action, Bielun was deposed regarding the location of Alta's books and records.  Bielun testified that Alta's books and records had been relocated to a building in the middle of an auto junk yard in North Las Vegas, Nevada, but he could not even recall the exact location of the junk yard.

66.    Upon her appointment as Receiver, Clark had her counsel contact Alta's transfer agent, Interwest Transfer, to obtain a listing of Alta's stockholders.  Because Alta owed Interwest for past services, Interwest was unwilling to provide the stockholder list unless its bill was brought current.

67.    Clark was ultimately able to obtain funding to pay Interwest's bill and around March 2012, Clark was able to obtain a copy of Alta's stock register.

68.    The stock register identifies shareholders, addresses and the number of shares owned by each shareholder, but it contains no details relating to the circumstances under which each stock certificate was issued.  In other words, even though Clark obtained Alta's stock register in March 2012, there was no information in the register to cause her to question Century's ownership of stock.

69.    Clark and the other parties to the Quiet Title Action settled that litigation, but Clark insisted the settlement had to be approved by the Receivership Court before it could be binding on Alta.

70.    Clark filed a motion to have the settlement approved by the Receivership Court and a hearing on that motion was scheduled for November 11, 2012.

71.     Allen personally made an appearance at the hearing on the settlement motion on November 1, 2012. At that hearing he disclosed, for the first time, the existence of the Disputed Stock, and Aero-Nautical's claim of ownership.

72.     While Allen disclosed the existence of the Disputed Stock on November 1, 2012, he did not disclose the circumstances surrounding the issuance of the stock.

73.     Following Allen's disclosure of the Disputed Stock, the Receiver began an investigation into the issuance of the stock and, in early 2013, discovered the circumstances surrounding its issuance.

74.     Allen attended most of the discovery depositions and most of the hearings in the Quiet Title Action and he was fully aware of Alta's troubled history and the absence of officers and directors who could authorize the issuance of the Disputed Stock. Any reasonable person knowing as much about Alta's corporate history as Allen did, would have been, or should have been, suspicious about the validity of the stock.

**FIRST CLAIM FOR RELIEF**
**(Fraud in the Issuance of the Disputed Stock)**
**(Against Swahn, Anthony and Century)**

75.     Alta repeats and realleges each and every allegation contained in paragraphs 1 through 74 above, and incorporates the same herein as if set forth in their entirety.

76.     Swahn, as Alta's Custodian, owed fiduciary duties to Alta and Alta's shareholders.

77.     Anthony, as Alta's sole officer and director, owed fiduciary duties of care, loyalty and good faith to Alta and its shareholders.

16

78.     At all times pertinent to the claims set forth herein, Swahn and Anthony acted for the purpose of advancing their own individual financial best interests, in violation of their duties to Alta and its shareholders, without concern about what was in Alta's or its shareholders' best interests.

79.     Swahn's improper conduct in the fraud resulting in the issuance of the Disputed Stock includes, but is not limited to:

        A.     His misrepresentations to the Custodianship Court that:

                i.     He was a shareholder of Alta when, in fact, he was not a registered shareholder;

                ii.    He intended to hold a shareholder meeting when, in fact, he did not;

                iii.   He intended to restore Alta's business for the benefit of Alta's shareholders when, in fact, he did not;

                iv.    He would report any developments to the Court when, in fact, he did not; and

                v.     He had no conflicts of interest when the apparent sole purpose of the Custodianship was to cause 42% of Alta's shares to be issued to an entity in which he had a financial interest.

        B.     His appointment of Anthony as Alta's sole officer and director without authority to do so under the provisions of NRS Chapter 78;

        C.     His appointment of Anthony as Alta's sole officer and director when he knew Anthony's sole act as an officer and director of Alta was going to be to issue the Disputed Stock to an entity in which he and Anthony had financial interests in violation of Anthony's duties to Alta and its shareholder;

        D.     His conflict of interests in serving as Alta's Custodian by reason of his financial interests in Century;

E.     His intentional concealment of the issuance of the Disputed Stock by failing to advise the Custodianship Court, Alta's shareholders or the SEC of the issuance.

80.     Anthony's improper conduct in the fraud resulting in the issuance of the Disputed Stock includes, but is not limited to:

A.     His conflict of interests by reason of his service as Alta's sole officer and director while maintaining his financial interests in Century;

B.     The issuance of the Disputed Stock to an entity in which he had a financial interest, which issuance was neither fair to Alta nor in Alta's best interests;

C.     His authorization to issue the Disputed Stock even though he was not legally appointed as a director of Alta;

D.     His authorization to issue the Disputed Stock for little or no consideration;

E.     His failure to escrow the Disputed Stock until Century performed the services that were to be consideration for the stock; and

F.     His Concealment of the issuance of the Disputed Stock by not reporting the same to the Custodianship Court, Alta's shareholders or the SEC.

81.     By reason of Swahn's and Anthony's breaches of their duties to Alta and its shareholders, Alta and its shareholders have been damaged in amounts to be proven at the trial in this matter.

WHEREFORE, Alta prays for relief as hereinafter set forth.

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECOND CLAIM FOR RELIEF**
**(Conspiracy to Commit Fraud)**
**(Against Swahn, Anthony and Century)**

82.    Alta repeats and realleges each and every allegation contained in paragraphs 1 through 81 above, and incorporates the same herein as if set forth in their entirety.

83.    Swahn, Anthony and Century, by acting at all times in concert with each other as hereinabove alleged, intended to accomplish an unlawful act, to wit: the illegal and fraudulent issuance of the Disputed Stock in the manner hereinabove set forth.

84.    Even though Century was the recipient of the Disputed Stock, Swahn and Anthony acted in their own financial best interests in connection with the issuance of the Disputed Stock by reason of their direct financial interests in Century.

85.    As a result of Swahn, Anthony and Century's concerted efforts to cause the Disputed Stock to be issued to Century, Alta and its shareholders have been damaged in an amount to be proven at the trial in this matter.

WHEREFORE, Alta prays for relief as hereinafter set forth.

**THIRD CLAIM FOR RELIEF**
**(Breaches of Fiduciary Duties)**
**(Against Swahn and Anthony)**

86.    Alta repeats and realleges each and every allegation contained in paragraphs 1 through 85 above, and incorporates the same herein as if set forth in their entirety.

87.    Swahn and Anthony owed fiduciary duties to Alta and Alta's shareholders as hereinabove alleged.

19

88.   Swahn and Anthony breached their fiduciary duties to Alta and its shareholders as hereinabove alleged.

89.   As a result of Swahn and Anthony's breaches of their fiduciary duties, Alta and its shareholders have been damaged in an amount to be proven at the trial in this matter.

WHEREFORE, Alta prays for relief as hereinafter set forth.

**FOURTH CLAIM FOR RELIEF**
**(Constructive Fraud)**
**(Against Swahn and Anthony)**

90.   Alta repeats and realleges each and every allegation contained in paragraphs 1 through 89 above, and incorporates the same herein as if set forth in their entirety.

91.   Swahn and Anthony both owed fiduciary duties to Alta in their purported roles as its Custodian and officers and directors of the company.

92.   Swahn and Anthony both breached those fiduciary duties as hereinabove alleged.

93.   Furthermore, Swahn and Anthony concealed their improper and illegal conduct relating to the issuance of the Disputed Stock from the Custodianship Court and Alta's shareholders.

94.   As a result of their breaches of their fiduciary duties and the concealment of their improper and illegal conduct, Alta and its shareholders have been damaged in an amount to be proven at trial in this matter.

WHEREFORE, Alta prays for relief as hereinafter set forth.

///

///

20

**FIFTH CLAIM FOR RELIEF**
**(Aiding and Abetting Fraud Against Century)**

95.     Alta repeats and realleges each and every allegation contained in paragraphs 1 through 94 above, and incorporates the same herein as if set forth in their entirety.

96.     Century, by and through the conduct of its principals Swahn and Anthony, knew that Swahn and Anthony owed fiduciary duties to Alta and its shareholders.

97.     Century, by and through the conduct of its principals Swahn and Anthony, knew that Swahn and Anthony's conduct in issuing the Disputed Stock violated their fiduciary duties to Alta and its shareholders.

98.     Century, by and through the conduct of its principals Swahn and Anthony, knew that Swahn and Anthony concealed the issuance of the Disputed Stock by failing to advises the Custodianship Court, Alta's shareholders or the SEC of the issuance.

99.     Century, by and through the conduct of Swahn and Anthony, assisted and encouraged Swahn and Anthony to issue the Disputed Stock and to conceal the issuance from the Custodianship Court, Alta's shareholders and the SEC.

100.    As a result of Century's conduct in assisting and encouraging Swahn and Anthony to breach their fiduciary duties to Alta's shareholders and to conceal those breaches, Alta and its shareholders have been damaged in an amount to be proven at the trial in this matter.

WHEREFORE, Alta prays for relief as hereinafter set forth.

///

1

2

3

**SIXTH CLAIM FOR RELIEF**
**(Declaratory Relief)**
**(Affects all Defendants)**

4

5

6

101.   Alta repeats and realleges each and every allegation contained in paragraphs 1 through 100 above, and incorporates the same herein as if set forth in their entirety.

7

8

102.   Nevada has adopted the Uniform Declaratory Judgments Act set out in Chapter 30 of the Nevada Revised Statutes.

9

10

11

12

13

103.   NRS §30.030 provides that courts of record have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed.  Furthermore, no objection or proceeding shall be open to objection on the ground that a declaratory judgment is prayed for.

14

15

16

17

104.   NRS §30.040 provides that any person interested under a written contract or other writings constituting a contract or whose rights are affected by a contract may have its rights determined and obtain a declaration of rights thereunder.

18

19

20

21

105.   NRS §30.070 provides that the enumeration of cases in other sections of the Declaratory Judgments Act does not limit or restrict the exercise of the general powers conferred in NRS §30.030 in any proceeding where declaratory relief is sought if the judgment will terminate the controversy or remove the uncertainty.

22

23

24

25

106.   NRS §30.140 provides that the Declaratory Judgments Act is remedial and its purpose is to settle and afford relief from uncertainty with respect to rights, status or other legal relations and its provisions are to be liberally construed.

26

27

28

107.   In relation to the Disputed Stock, there is a genuine uncertainty regarding the validity of the issuance of the stock and the parties' rights in relation thereto including, but not limited to, the very questions of whether the stock is or is

22

not valid and if Aero-Nautical is or is not a bona-fide shareholder of Alta by reason of its purchase of the Disputed Stock from Century.

108.   It is appropriate for this Court to issue a declaration respecting the validity of the issuance of the Disputed Stock and Aero-Nautical's status as a shareholder of Alta by reason of its acquisition of the Disputed Stock.

WHEREFORE, Alta prays for relief as follows:

A.   For declaratory judgment declaring that:

    i.   The Disputed Stock was fraudulently issued;

    ii.   The issuance of the Disputed Stock was null and void ab intitio;

    iii.   The Disputed Stock continues to be void and has no legal effects whatsoever;

    iv.   The issuance of the Disputed Stock should be rescinded;

    v.   No person or entity, including Aero-Nautical, may claim rights as a shareholder of Alta by reason of his/her/its claim of ownership of the Disputed Stock;

    vi.   Alta's transfer agent shall be directed to remove the Disputed Stock from Alta's stock register; and

    vii.   Such other declarations as are just and appropriate under the circumstances;

B.   For entry of an order rescinding the issuance of the Disputed Stock;

C.   For damages as may be proven at the trial in this matter;

D.   For costs of suit as may be allowed by law;

E.   For an award of attorneys' fees; and

///

///

///

23

F.    For such other and further relief as is just and proper under the circumstances.

DATED this 16th day of September, 2013.

WOODBURN AND WEDGE

BY: _____
John F. Murtha, Esq
Ellen Jean Winograd, Esq.
Dane W. Anderson, Esq.
Attorneys for Angelique L. M. Clark, Receiver for Alta Gold Mining Co.

24

1

### **CERTIFICATE OF SERVICE**

2

3          I certify that I am an employee of the law firm of Woodburn and Wedge, and that

4     on the __16__ day of September, 2013, I caused the foregoing document to be delivered

5     to all parties entitled to notice in this action by electronic service through the Court's

6     CM/ECF system to:

7                              MARQUIS AURBACH COFFING
8                              Micah S. Echols, Esq.
                               mechols@maclaw.com
9
                               McDONALD CARANO WILSON LLP
10                             Aaron Shipley, Esq.
                               ashipley@mcdonaldcarano.com
11

12

13

14                                    

15

16

17

18

19

20

21

22

23

24

25

26

27

28